**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JASON LANKHORST and RACHELLE
LANKHORST, individually and on behalf of
all others similarly situated,

                         Plaintiffs,

v.                                                          Case No. 3:11-cv-390-J-34JRK

INDEPENDENT SAVINGS PLAN
COMPANY, d/b/a ISPC,

                         Defendant.
_____/

**O R D E R**

   **THIS CAUSE** is before the Court on Defendant's Motion to Tax Costs and for

Recovery of Attorney's Fees (Doc. No. 219; Motion).  Plaintiffs oppose the Motion.  See

Plaintiffs' Opposition to Defendant's Motion for Costs and for Recovery of Attorney's Fees

(Doc. No. 220; Response).  The Motion is ripe for the Court's review.

**I.      Procedural Background**

   This action has a well documented history.  As noted by the Honorable Paul A.

Magnuson, United States District Judge, in his Memorandum and Order dated July 22, 2015

(Doc. No. 237),

> [t]he full factual and procedural background is set forth in numerous other
> Orders–the Order granting Defendant summary judgment (Docket No. 200),
> the Order denying Plaintiffs' Rule 59 Motion (Docket No. 207), the Order
> denying Plaintiffs' first Rule 60(b) Motion (Docket No. 214), and the Court of
> Appeals' Order[1] affirming the grant of summary judgment (Docket No. 232).

---

   [1]      See Lankhorst v. Indep. Savings Plan Co., 787 F.3d 1100 (11th Cir. 2015).

Id. at 1.  As such, this Court will not repeat that history here.  Nevertheless, for purposes of resolving the instant Motion, the Court notes that Plaintiffs asserted three claims against Defendant based on its financing of water treatment equipment in Plaintiffs' Third Amended Class Action Complaint (Doc. No. 63; Third Amended Complaint):  that Defendant violated the Truth in Lending Act (TILA) in Counts One and Two and violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) in Count Three.  See id. at 12-19.  Specifically, in Count One, Plaintiffs alleged that Defendant violated 15 U.S.C. § 1637a(9) of TILA by failing to disclose examples of the minimum payments and maximum repayment period under the terms provided in the credit agreement.  See id. at 12-14.  In Count Two, Plaintiffs alleged that Defendant further violated TILA by failing to comply with Regulation Z, 12 C.F.R. § 226.15, which requires that consumers be given a three day rescission period for all credit agreements secured by a consumer's principal dwelling.  See id. at 15.  Plaintiffs alleged that Defendant violated Regulation Z by failing to wait to disburse funds, deliver materials, or perform services until after the rescission period expired and Defendant was "reasonably satisfied that the consumer ha[d] not rescinded."  See id. at 15-17.  In Count Three, which incorporates Count Two, Plaintiffs allege that, by violating TILA as well as the Florida Home Solicitation Sales Act (FHSSA), which also provides for a three-day cancellation period, Defendant has violated FDUTPA.  See id. at 17-19.

After certifying a class of Defendant's Florida customers who entered into open-ended financing agreements to purchase water treatment equipment systems, see Order (Doc. No. 105) at 21, the Court granted summary judgment in favor of Defendant as to all three of Plaintiffs' claims.  See Order (Doc. No. 200).  Plaintiffs appealed and the Eleventh Circuit

affirmed the entry of summary judgment.  See Lankhorst, 787 F.3d at 1102-03.  With this

procedural background in mind, the Court turns first to Defendant's request for an award of

attorney's fees.

## II.    Attorney's Fees

The parties do not dispute that neither TILA nor Regulation Z provide for an award of

attorney's fees for a prevailing defendant.  See Motion at 3; Response at 9.  Nevertheless,

Defendant contends it is entitled to an award of attorney's fees under Plaintiffs' financing

agreement with Defendant and under FDUTPA.  See Motion at 3-4.  The Court addresses

each argument in turn.

### A.    Contractual Right to Fees

Defendant cites paragraph 23 of the ISPC Open-End Credit Application and

Agreement (Doc. No. 141-12; Financing Agreement) which Defendant argues "provide[s]

various remedies for Plaintiffs' defaults" and specifically states that if there is a lawsuit and

Plaintiffs lose, they agree to pay reasonable attorney's fees and costs to Defendant.

See Motion at 3-4.  Plaintiffs respond that the attorney's fee provision of the Financing

Agreement is inapplicable to Plaintiffs' TILA and FDUTPA claims because those claims do

not arise from any default under the terms of the Financing Agreement.  See Response at

11-12.  Paragraph 23, in its entirety, states:

> 23.    FAILURE TO PAY – If YOU do not pay on time; fail to comply with any
> terms of this Agreement; have made any warranty or representation which is
> false or misleading; YOU die; sell or convey the real property on which
> Purchased equipment is installed; dispose of, assign, transfer or encumber the
> Purchases subject to our security interest; or if in our exclusive judgment WE
> deem ourselves insecure as to the prospects for repayment by YOU, then
> YOU will be deemed in default.  In such "Event of Default", YOU agree as
> follows: (a) WE can refuse to allow further Purchases on YOUR account; (b)

WE can require that YOU make immediate payment of YOUR entire balance, including principal, FINANCE CHARGE, and all other charges, subject to any right YOU have by state law to correct YOUR non-payment; (c) WE may retake possession of any equipment Purchased by YOU which serves as our security interest under the terms of this Agreement; (d) YOU waive presentment, demand, notice of dishonor, protest and, as permitted by law, all other notices related to YOUR obligation to make payments to us; (e) WE may charge YOU a "default rate of interest" equivalent to the highest rate permitted by applicable law; (f) YOU agree that time is of the essence to the provisions of this Agreement and our rights hereunder; (g) YOU consent to allow disposable earnings to be garnished in accordance with F.S. 222.11(2)(b) in the event of post-judgment execution; (h) WE may use an outside attorney to collect YOUR account and if WE do not use an outside attorney to collect YOUR account, YOU agree that exemption § 1692a(6)(A) of the FCPA applies; (i) YOU consent to reasonable and appropriate communications, initiated by us, outside the limited hours per F.S. §559.72(17); (j) Pursuant to F.S. 222 et seq., as amended, YOU agree as follows: [1.] For either post-judgment execution and/or consensual UCC-1 lien/security interest purposes, "Purchases" made by YOU pursuant hereto are for "labor, services, or materials furnished to repair and improve real property"; and [2.] Judgments resulting from an "Event of Default" hereunder and/or from any consensual UCC-1/lien/security interest as described herein, constitute valid enforceable liens against YOUR homestead property and will be paid in full by YOU upon any sale, conveyance or mortgage financing of YOUR homestead property; and [3.] YOU waive and deem inapplicable any referenced provision which may allow a homestead sale or mortgage to be completed free and clear of judgments and/or consensual UCC-1s/liens/security interests.

If there is a lawsuit and YOU lose, YOU agree to pay reasonable attorney's fees, any expenses and costs WE incur, plus court costs, as permitted by law. YOU agree to accept service of process by Certified Mail, Return Receipt Requested.   YOU and WE agree to waive trial by jury in any action, proceeding or counterclaim brought by either of us against the other on any matter whatsoever arising out of or in any way connected with this Agreement. YOU and WE agree that the venue for any such suit shall be Pasco County, Florida.

Financing Agreement ¶23.

Under Florida law, courts strictly construe attorney's fee provisions and assess fees

for each claim individually.  Keys Lobster, Inc. v. Ocean Divers, Inc., 468 So. 2d 360, 363

(Fla. 3d DCA 1985).[2]  As such "[a]ttorney's fees are not necessarily recoverable as to any and all litigation relating to a contract that provides for attorney's fees." Bowman v. Kingsland Dev., Inc., 432 So. 2d 660, 664 (Fla. 5th DCA 1983).  Rather, the right to attorney's fees under a particular contract provision is limited by the terms of that provision. Id.  For example, in Bay Lincoln-Mercury-Dodge, Inc. v. Transouth Mortgage Corporation of Florida, 531 So. 2d 1027 (Fla. 1st DCA 1988), Florida's First District Court of Appeal reversed an award of attorney's fees where the contract only provided for attorney's fees in two separate instances: the buyer's default or a loss due to a buyer's claim against the assignee, neither of which had occurred.  Id. at 1028 ("Since the repurchase agreement does not include a provision for attorney's fees, the trial court's application of the retail installment attorney's fee provision to the seller's repurchase obligation was improper.").

Here, the attorney's fee provision in the Financing Agreement is limited to lawsuits brought due to a failure to pay or other default specifically identified in paragraph 23 of the Financing Agreement, such as selling or encumbering the "Purchased equipment." See Financing Agreement ¶23.  The contract does not contain a broad attorney's fee provision allowing an award of fees for any and all litigation arising out the Financing Agreement. See, e.g., Caufield v. Cantele, 837 So. 2d 371, 379 (Fla. 2002) (reversing denial of award for attorney's fees for misrepresentation claim that was "inextricably intertwined" with the contract where attorney's fee clause provided for fee award "as the result of any litigation 'arising out of' the contract).  While the Financing Agreement is a part of the same

---

[2]     The Financing Agreement identifies Florida law as the governing law.  See Financing Agreement ¶18.

factual transaction upon which Plaintiffs alleged that Defendant failed to comply with federal and state law, and they relied on some of the Financing Agreement provisions to contend that Defendant took a security interest in their real property, there is no dispute that the TILA and FDUTPA claims in this case had nothing to do with a failure to pay or any other breach of the Financing Agreement itself.

Notably, Defendant did assert a counterclaim against Plaintiffs alleging a breach of the Financing Agreement, specifically a default by failing to pay.  See ISPC's Answer, Affirmative Defenses, and Counterclaim to Third Amended Class Action Complaint (Doc. No. 67; Counterclaim) at 18-21.  However, Defendant stipulated to a dismissal of this claim with "each Party to bear its own attorneys' fees and costs" with respect to that claim.  See Amended Joint Stipulation for Dismissal With Prejudice of Defendant's Counterclaim (Doc. No. 215).  Thus, Defendant cannot suggest that it is seeking an award of attorney's fees based on Plaintiffs' default.

In interpreting the Financing Agreement, the Court recognizes that the language of paragraph 23 is somewhat broad in that it provided for the payment of attorney's fees if there is a lawsuit without any qualifying terms in that particular sentence.  Additionally, paragraph 23 continues with broader language regarding the waiver of a jury trial "in any action brought" by either party against the other, "in any way connected with this Agreement."  Nevertheless, the Court must strictly construe the attorney's fee provision, which does not stand alone, but rather is part of the failure to pay provision of the Financing Agreement.  Accordingly, the Court concludes that the Financing Agreement limits attorney's fees to those incurred in connection with a failure to pay or any manner of default under the Financing Agreement.

Thus, Defendant is not entitled to recover attorney's fees for defending the TILA and FDUTPA claims raised in this action pursuant to the Financing Agreement. See generally Cohen v. United Am. Bank of Cent. Fla., 83 F.3d 1347, 1350 (11th Cir. 1996) ("The fee provision in the contract, therefore, does not apply to permit United American to recover attorney's fees for successfully defending the original claim that was not predicated on the contract.")

## B.    Fees under FDUTPA

Defendant alternatively argues that it should be awarded attorney's fees because FDUTPA provides for such an award. See Motion at 4. The relevant statutory provision states:

> In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

Fla. Stat. § 501.2105(1). Notably, the Florida Legislature amended the language of this statute in 1994 to place "an award of prevailing party attorney's fees within the discretion of the trial court." Humane Soc'y of Broward Cnty., Inc. v. Fla. Humane Soc'y, 951 So. 2d 966, 971 (Fla. 4th DCA 2007). In Florida Humane Society, the court interpreted this amendment "as a legislative recognition that mandatory fee awards had a chilling effect on consumer plaintiffs bringing suit under the FDUTPA," the primary policy of which is protecting the consuming public "from those who engage in unfair methods of competition, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Id. In determining whether to award fees in its discretion, the Court considers factors such as:

(1) the scope and history of the litigation;

(2) the ability of the opposing party to satisfy an award of fees;

(3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;

(4) the merits of the respective positions–including the degree of the opposing party's culpability or bad faith;

(5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;

(6) whether the defense raised a defense mainly to frustrate or stall;

(7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

Id. at 971-72.

Plaintiffs contend that the Court should deny Defendant's request for attorney's fees under FDUTPA because their FDUTPA claim was incidental to their TILA claims, Defendant failed to address the above factors that must be considered when awarding fees under FDUPTA, and Defendant failed to submit hours specifically spent litigating the FDUTPA claim. See Response at 12-17. In North American Clearing, Inc. v. Brokerage Computer Systems, Inc., 395 F. App'x 563, 565-66 (11th Cir. 2010), the Eleventh Circuit affirmed a denial of a request for attorney's fees under FDUTPA where the prevailing party "made no reference to the factors Florida courts consider when determining the appropriateness of discretionary fee awards." Indeed, the Eleventh Circuit determined that, in failing to address the factors that could justify a FDUTPA fee award, the appellant also waived the issue for purposes of appeal. See id. at 566.

In the Motion, Defendant notes that Plaintiffs brought a claim under FDUTPA in Count Three of the Third Amended Complaint and quote Florida Statutes section 501.2105. See

Motion at 4.  However, Defendant says nothing more.  It does not make any attempt to address the relevant factors to be considered in determining whether to award discretionary attorneys fees or otherwise attempt to explain why the Court should award fees under FDUTPA.  Nor does Defendant explain why an award of attorneys fees under FDUTPA would be appropriate here where the FDUTPA violation alleged in Count Three was based largely on a violation of TILA, which does not provide for attorney's fees.  See JES Properties, Inc. v. USA Equestrian, Inc., 432 F. Supp. 2d 1283 (M.D. Fla. 2006) (declining to award attorney's fees under FDUTPA when the claim was based on another federal statute that did not provide for fees).

In light of Defendant's failure to make any attempt to support its request for an award of discretionary attorneys fees in this action, the Court declines to find such an award to be warranted.

## III.   Costs

### A.   Amount

Rule 54(d)(1), Federal Rules of Civil Procedure (Rule(s)) provides in pertinent part that costs other than attorney's fees "should be allowed to the prevailing party."  See Rule 54(d)(1).[3]  This provision "establishes a presumption that costs are to be awarded to a prevailing party, but vests the district court with discretion to decide otherwise."  Chapman v. AI Transport, 229 F.3d 1012, 1038 (11th Cir. 2000) (en banc) (citations omitted).  A "district court's discretion not to award the full amount of costs incurred by the prevailing

---

[3]   There is no dispute that Defendant is the prevailing party.  See Fireman's Fund Ins. Co. v. Tropical Shipping and Const. Co., Ltd., 254 F.3d 987, 1012 (11th Cir. 2001).

party is not unfettered," however, "'since denial of costs is in the nature of a penalty for some defection on [the prevailing party's] part in the course of the litigation.'" Id. at 1039 (quotation omitted) (alteration in Chapman).  Thus, "[t]o defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so." Id. (citation omitted).

Nevertheless, "a court may only tax costs as authorized by statute." EEOC v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000) (citation omitted).  Thus, a district court may not award costs under Rule 54 "in excess of those permitted by Congress under 28 U.S.C. § 1920." Maris Distrib. Co. v. Anheuser-Busch, Inc., 302 F.3d 1207, 1225 (11th Cir. 2002) (citation omitted).  Section 1920 allows taxation of the following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under [28 U.S.C. § 1923]; [and]
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

28 U.S.C. § 1920.

Plaintiffs do not dispute that Defendant is entitled to an award of costs but object to certain items listed in Defendant's Bill of Costs (Doc. 219-1 at 1-2) as not recoverable under § 1920.  Specifically, Plaintiffs assert that Defendant may not recover: "(1) copies made for the convenience of counsel, or for documents in the possession of [Defendant]; and (2) depositions that were not used by [Defendant] and that include charges for the convenience of counsel." See Response at 4.  Notably, Defendant has not sought leave to reply to those objections nor has Defendant sought to amend its Motion or Bill of Costs to supplement any

deficiencies identified by Plaintiffs.[4]  Upon review, the Court finds that Defendant's Bill of Costs must be reduced as follows.

### i.    Copying Costs

Defendant requests $6,465.67 in "fees for exemplification and the costs of making copies."  See Affidavit of Murray B. Silverstein (Doc. 219-1 at 3; Silverstein Aff.) ¶ 3.I.[5] Although § 1920(4) permits the taxation of costs for certain copies and exemplifications, these items must have been necessarily obtained for use in the case.  See W&O, 213 F.3d at 623.  To establish necessity, the prevailing party need not show that the documents were introduced into evidence or submitted to the court.  See id.; see also Horton Homes, Inc. v. United States, No. CIVA5:01-CV-130-2, 2004 WL 1719354, at *2 (M.D.Ga. Jun. 10, 2004). Instead, the standard is "whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue."  W&O, Inc., 213 F.3d at 623.  Notably, the party seeking an award of copying costs bears the burden of establishing necessity.  See Scelta v. Delicatessen Support Svcs. Inc., 203 F.Supp.2d 1328, 1339 (M.D. Fla. 2002).

Here, Defendant provides no explanation as to the nature of the copies or why the copies were made.  See Cullens v. Ga. Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994) (finding that a district court did not err in disallowing photocopying costs where the plaintiffs

---

[4]       Plaintiffs filed their Response challenging these costs on April 1, 2014.  The case was on appeal from April 2, 2014, until the Eleventh Circuit affirmed the decision on May 29, 2015.  See Notice of Appeal (Doc. 221); Opinion of USCA (Doc. 232).  The Eleventh Circuit issued the mandate ending the appeal on June 30, 2015, see Mandate (Doc. 233), yet in the nearly three months since then, Defendant has made no effort to support its request for costs in the face of Plaintiffs' challenges.

[5]       Defendant also seeks $3,362.24 in fees and disbursements for printing.  See Bill of Costs. Defendant identifies these printing costs as related to the production of documents in response to Plaintiffs' discovery requests.  See Silverstein Aff., Ex. D.  Plaintiffs do not challenge Defendant's request for taxation of these printing costs, see Response at 7, and the Court accepts that they are recoverable.

did not provide evidence regarding the documents use or intended use).  Moreover, Defendant fails to present any evidence or argument demonstrating that it "could have reasonably believed that it was necessary to copy the papers at issue."  W&O, Inc., 213 F.3d at 623.  Indeed, the only information Defendant offers in support of its request for copying costs are numerous invoices with a line item for "document duplication" and little other information.[6]  See Silverstein Aff., Exs. E-G.  Although the Silverstein Affidavit generally states that the copies listed in Exhibit G were made in support of various motions, briefs and "deposition preparation," Silverstein does not explain why it was necessary to make those copies.  See Silverstein Aff. ¶ 3.G.  Because it is  Defendant's burden to demonstrate that these costs are recoverable, in the absence of any information to support the necessity of obtaining these copies, the Court will deny Defendant's request to tax "fees for exemplification and the costs of making copies."

### ii.      Deposition Costs

Defendant also seeks $6,532.80 in "fees for printed or electronically recorded transcripts necessarily obtained for use in the case."  See Bill of Costs.  In support, Defendant provides the invoices pertaining to the court reporter fees and costs incurred with respect to various depositions, as well as to obtain a transcript of a May 1, 2012 motion hearing before this Court.  See Silverstein Aff., Ex. C.  Plaintiffs contend that the amount requested should be reduced because Defendant includes charges for depositions that were

---

[6]      Notably, the Silverstein Affidavit lists $60.03 in duplication costs identified as "Clay County – Copies."  See Silverstein Aff. ¶ 3.E.  However, a review of the invoices reveals that Defendant did not actually incur those costs as reflected in a separate invoice which shows that Defendant was reimbursed $60.03 from the Clerk of the Circuit Court in Clay County as an overpayment.  See Silverstein Aff., Ex. E at 3, 4.  While this sum may seem insignificant, the Court finds this type of carelessness troubling when a litigant is asking the Court to accept its Bill of Costs and impose those costs on the opposing party.

never used in Defendant's case, as well as a charge for the court reporter's attendance at a deposition Defendant inadvertently failed to cancel.  <u>See</u> Response at 7.  In addition, Plaintiffs object to an award of the transcription costs identified as "ASCII condensed version, Exhibit Link, Exhibit Scan, additional copies, DVD, and videoconferencing." <u>See</u> <u>id.</u> at 7-9. Plaintiffs maintain that these charges are not recoverable because they were incurred merely for the convenience of counsel.  <u>Id.</u> at 8-9.  Plaintiffs also argue that Defendant may not recover the videotaping and video-conferencing charges related to the deposition of Plaintiffs' expert, who was to appear live at trial.  <u>See</u> <u>id.</u> at 9.  In its Motion, Defendant did not offer any reason why the aforementioned charges were necessary for use in this case, and as noted above, Defendant has not responded to Plaintiffs' arguments.

Section 1920(2) allows taxation of costs for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case[.]"  28 U.S.C. §1920(2). However, as with the copying costs discussed above, the costs incurred in procuring the transcripts are recoverable only if necessarily obtained for use in the case. See <u>W&O</u>, 213 F.3d at 620-21 ("The question of whether the costs for a deposition [or hearing] are taxable depends on the factual question of whether the deposition was wholly or partially necessarily obtained for use in the case." (internal quotation omitted)).  "Courts have generally held that depositions of persons named on the witness list at trial or relied upon in a motion of summary judgment are recoverable as costs necessary for the case." <u>See</u> <u>Kobie v. Fithian</u>, No. 2:12-cv-98-FtM-29DNF, 2014 WL 2215752, at *1 (M.D. Fla. May 28, 2014).  In their Response, Plaintiffs state that "[t]here are deposition charges that Plaintiffs challenge because the depositions were never used in [Defendant's] case." <u>See</u> Response at 7.

Remarkably, Plaintiffs fail to identify the specific depositions to which they refer.  Defendant, equally unhelpful, fails to provide the Court with any information regarding how each of these depositions was "necessarily obtained for use in the case."

Nonetheless, the Court has independently reviewed the motions for summary judgment and witness lists filed in this case and finds that, with one exception, the depositions were necessarily obtained because they were of individuals listed as a witness for trial.  See Plaintiffs' Witness List (Doc. 197).  Thus, the Court will accept that these depositions, with the exception identified below, are appropriately taxed.  See W&O, Inc., 213 F.3d at 621 ("Taxation of deposition costs of witnesses on the losing party's witness list is reasonable because the listing of those witnesses indicated both that the [prevailing party] might need the deposition transcripts to cross-examine the witnesses, and that 'the information those people had on the subject matter of this suit was not so irrelevant or so unimportant that their depositions were outside the bound of discovery.'" (internal citation omitted) (quoting Independence Tube Corp. v. Copperweld Corp., 543 F. Supp. 706, 718 (N.D. Ill. 1982))); Daker v. Steube, No. 8:10-cv-1784-T-27TBM, 2012 WL 2384050, at *2 (M.D. Fla. June 25, 2012).  However, the Court is unable to discern any reason why the deposition of Reid Westgard was necessary to this litigation as he was not listed as a witness on either party's witness list and his testimony was not cited in the summary judgment briefing.  As such, and because Defendant has not come forward with any reason why it was necessary to obtain a copy of this deposition, the Court will not allow Defendant to recover the cost for obtaining Westgard's deposition transcript.  The Court further determines that Defendant cannot recover the cost of the court reporter's attendance fee at

the deposition Defendant inadvertently failed to cancel.  See Silverstein Aff., Ex. C at 6.

Plainly such a fee is not necessarily incurred.[7]

In addition, Plaintiffs' objection to the extraneous items included in the court reporter

invoices is well-taken.  Plaintiffs argue that the charges for extra copies, ASCII condensed

versions, exhibit links, exhibit scans, DVDs and video-conferencing encompass items

obtained merely for the convenience of counsel.[8]  See Response at 8-9.  Defendant has not

explained the meaning of these charges or their necessity.  Thus, based on the current

record, the Court agrees with Plaintiffs that these items appear to be merely for convenience,

and will reduce the costs awarded accordingly.  See Cannioto v. Louisville Ladder, Inc., No.

8:09-cv-1892-T-30TBM, 2011 WL 2473100, at *1 (M.D. Fla. June 22, 2011).  Moreover,

although not specifically challenged by Plaintiffs, the Court will also subtract the charges for

shipping and handling from the total.  See Watson v. Lake Cnty., 492 F. App'x 991, 997 (11th

Cir. 2012) (holding that the district court abused its discretion in taxing costs for "shipment

of the depositions" because "§ 1920 does not authorize recovery of costs for shipment of

depositions"); Kobie, 2014 WL 2215752, at *2; Daker, 2012 WL 2384050, at *2.

Finally, Plaintiffs argue that the videography and video-conferencing charges related

to the deposition of their expert, David Pelligrinelli, are costs incurred for the convenience

---

[7]     The Court also questions whether it was necessary for Defendant to obtain a transcript of the
May 1, 2012 motion hearing.  However, Plaintiffs do not challenge this request.  Thus, the Court will accept that
it was necessarily incurred given the complexity of the subject matter.  Nonetheless, failing to present any
justification for doing so, Defendant may not recover for the added cost of expediting the transcript or obtaining
an extra copy.

[8]     Plaintiffs do not specifically object to the charges for the "Exhibit Copies" that are included in
some of the invoices.  See Response at 8-9.  The Court finds it appropriate to tax these charges.  See Kidd v.
Mando Am. Corp., 870 F. Supp. 2d 1297, 1298-99 (M.D. Ala. 2012).

of counsel and should not be taxed against Plaintiffs.  <u>See</u> Response at 9.  The Court agrees

that Defendant has failed to establish the video-conferencing charges in this case are

properly recoverable.  <u>See</u> <u>Watson</u>, 492 F. App'x at 997 (finding that the district court abused

its discretion in taxing costs for telephone-conference fees related to the taking of a

deposition).  With respect to the costs of videotaping the deposition, the Eleventh Circuit

instructs that:

> when a party notices a deposition to be recorded by nonstenographic means,
> or by both stenographic and nonstenographic means, and no objection is
> raised at that time by the other party to the method of recordation pursuant to
> Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award
> the cost of conducting the deposition in the manner noticed.

<u>See</u> <u>Morrison v. Reichhold Chemicals, Inc.</u>, 97 F.3d 460, 464-65 (11th Cir. 1996); <u>see</u> <u>also</u>

<u>Watson</u>, 492 F. App'x at 997.  Thus, if Defendant noticed the deposition to be videotaped

and transcribed, and Plaintiffs did not object to this method of recordation, then Defendant

could properly recover those costs.  However, Defendant fails to provide the Court with any

evidence that it noticed Pelligrinelli's deposition in this manner or that Plaintiffs failed to

object.  As such, Defendant fails to establish that it is entitled to an award of the costs

associated with the video taping, and the Court will not award such costs.  Rather, Defendant

will be awarded only the cost of the stenographic transcript.  <u>See</u> <u>Morrison</u>, 97 F.3d at 465

In light of the foregoing, the Court will tax the following amounts from each of the court

reporter invoices:

| Invoice Date | Company | Amount Taxed or Reason Excluded |
|---|---|---|
| 1/4/2012 | Hedquist | $443.65[9] |
| 5/9/2013 | Kozachenko | $401.50 for 110 pages at $3.65 per page. |
| 5/16/2013 | Kozachenko | Not taxed as unnecessary copy. |
| 5/28/2013 | OrangeLegal | $377.95 for transcript and exhibit copies. |
| 6/14/2013 | OrangeLegal | $760.20 for transcript and exhibit copies |
| 5/31/2013 | U.S. Legal Support | Not taxed as unnecessary charge. |
| 6/14/2013 | OrangeLegal | $313.20 for transcript only. |
| 6/19/2013 | First Choice | $584.00 for 160 pages at $3.65 per page.[10] |
| 6/19/2013 | Depovision | Not taxed in absence of evidence regarding notice. |
| 7/3/2013 | Kaplanek | $343.10 for 94 pages at $3.65 per page.[11] |
| 7/12/2013 | OrangeLegal | $344.85 for Stanphill deposition transcript only. |
| 7/12/2013 | OrangeLegal | $158.10 for transcript only. |

[9] The invoice charges $479.75 for an original plus one copy of the transcript at a rate of $4.75 per page for 101 pages. See Silverstein Aff., Ex. C. In light of the per page rate charged, it appears that this total includes the cost of the copy as well. Because extra copies are for counsel's convenience and therefore not properly taxed as costs, see Jablonski v. St. Paul Fire & Marine Ins. Co., No. 2:07-cv-00386, 2010 WL 1417063, at *13 (M.D. Fla. Apr. 7, 2010), the Court has reduced the per page rate to account for only the cost of the original transcript. In the absence of any information as to what that rate would be, the Court utilized the $3.65 per page rate charged by the Court's official court reporter. In addition, the charge for "photostats" appears to constitute a charge for extra copies as well, and is therefore, not included in the total.

[10] The invoice for the June 4, 2013 deposition of David Pelligrinelli fails to differentiate between the total amount billed, and the cost of additional copies or various other services provided. Moreover, the invoice does not provide a per page rate or the number of pages charged. Nonetheless, the Pelligrinelli deposition is part of the record in this case such that the Court could determine that the June 4, 2013 deposition totaled 160 pages. See Deposition of David Pelligrinelli, NCA (Doc. 140-2; Pelligrinelli Dep.) at 1-160. To reach the $584.00 total, the Court applied the same $3.65 per page rate utilized above.

[11] As with the First Choice invoice, the Kaplanek invoice for the June 19, 2013 deposition of Pelligrinelli also fails to breakdown the total charge or provide a per page rate and total number of pages. Because the total sum appears to include items that are not taxable, the Court has independently calculated the appropriate taxable amount for this transcript by charging a $3.65 per page rate for 94 pages. See Pelligrinelli Dep. at 161-255.

| 11/14/2013 | OrangeLegal | $82.60 for transcript only. |
| | | **TOTAL: $3,809.15** |

### iii.    Witness Fees

Finally, the Court observes that Defendant requests $59.38 in "Fees for witnesses." See Bill of Costs.  However, "[u]nder 28 U.S.C. § 1821(b), a witness attending court or a deposition shall be paid a $40.00 attendance fee per day plus travel expenses.  This $40.00 is a maximum amount per witness, including expert witnesses."  See Rosa v. City of Ft. Myers, No. 2:05-cv-481-FtM-29SPC, 2008 WL 1776458, at *2 (M.D. Fla. Apr. 18, 2008) (citing Morrison, 97 F.3d at 463); see also Zunde v. Int'l Paper Co., No. 3:98CV439-J-20B, 2000 WL 1763843, at *10 (M.D. Fla. July 20, 2000).  Here, Defendant seeks to recover $59.38 as a witness fee for one witness, thereby slightly exceeding the $40 attendance fee authorized under the statute.  See Silverstein Aff., Ex. H.  However, Defendant has not demonstrated that the costs over and above the statutory fee are warranted as travel expenses because it did not provide the Court with any supporting documentation.  See 28 U.S.C. § 1821(c)(1) ("A receipt or other evidence of actual cost shall be furnished." (emphasis added)).  Accordingly, the Court will reduce the witness fee award to the $40 statutory maximum.

### iv.    Totals

In light of the foregoing, the Court will reduce the following line items in the Bill of Costs:

Fees for printed or electronically recorded transcripts
necessarily obtained for use in the case........................................$3,809.15

Fees for witnesses.......................................................................$40.00

Fees for exemplification and the costs of making copies
of any materials where the copies are necessarily obtained
for use in the case.........................................................................$0.00

The remainder of the items listed in the Bill of Costs are appropriately taxed.  Therefore,

having made these reductions, the Court will award costs in the amount of $7,651.39.

### B.    Apportionment

While Plaintiffs do not dispute that Defendant is entitled to certain costs, they argue

that each member of the plaintiff class is responsible for his or her pro rata share of the

taxable costs.  See Response at 1-4.  In support, Plaintiffs cite Rand v. Monsanto Company

as the seminal case on the rationale behind spreading the liability for costs among the class.

Response at 1; see Rand, 926 F.2d 596 (7th Cir. 1991) overruled on other grounds by

Chapman v. First Index, Inc., 796 F.3d 783, 786-87 (7th Cir. 2015).  In Rand, the district

court found the named plaintiff to be inadequate to serve as the representative plaintiff

because he was unwilling to risk responsibility for the payment of costs, and denied class

certification on this basis.  Rand, 926 F.2d at 598.  The Seventh Circuit Court of Appeals

reversed this decision and instructed that while a representative plaintiff must be

conscientious and willing to make some financial commitment to the case, he need not

"stake his entire fortune for the benefit of strangers."  Id. at 599.  Indeed, after observing that

class action lawsuits can be "frightfully expensive," the Rand court stated that "[n]o (sane)

person would pay the entire costs of a securities class action in exchange for a maximum

benefit of $1,135."  Id.  The court continued:

Class actions assemble small claims–usually too small to be worth litigating
separately, but repaying the effort in the aggregate.  A representative plaintiff

> gains nothing from the collective proceeding.  Under the district court's rationale, however, he could well lose, because filing the class suit would expose him to the entire costs of the case.  The class as a whole might be willing to pay the costs.  Lawyers, who unlike the representative plaintiff receive compensation reflecting any benefits conferred to the class as a whole, also may be willing to underwrite the costs.

Id.  The Rand court further determined that to the extent the local rules of the court, or ethical rules of the ABA Model Code, prohibited class counsel from covering the costs of the class action litigation, those rules were inconsistent with Rule 23, and therefore may not be applied to class action lawsuits.  Id. at 600-01.  Thus, having determined that a representative plaintiff may share the cost of a class action lawsuit with his attorney, the Seventh Circuit remanded the case for the district court to reevaluate the merits of class certification without the condition that the representative plaintiff must be willing to bear the entire cost of the litigation.  See id. at 601 ("All we have held is that a district court may not establish a per se rule that the representative plaintiff must be willing to bear all (as opposed to a pro rata share) of the costs of the action.").  Arguing that any award of costs should be spread among the class members, Plaintiffs cite to several cases where courts, following Rand, have found that to evaluate the adequacy of a representative plaintiff, the relevant inquiry focuses on the plaintiff's willingness to pay only their pro rata share of the expenses. See Motion at 3 (citing, e.g., Sandlin v. Shapiro & Fishman, No. 95-213-CIV-FTM-17D, 1997 WL 155418, at *6 (M.D. Fla. Mar. 18, 1997); Rivera v. Fair Chevrolet GEO P'ship, 165 F.R.D. 361, 365 (D. Conn. 1996)).

Upon careful review, the Court finds that Rand and its progeny are inapposite to the issue before this Court.  The authority Plaintiffs cite stands for the proposition that a class representative need not be willing to fully cover the cost of prosecuting the class action

claim.  The Rand court explained that the representative plaintiff and his counsel can agree that counsel will advance the costs of pursuing the class action claim with the understanding that the representative plaintiff is potentially responsible only for his pro rata share of those costs.  See Rand, 926 F.2d at 600-01.  According to Rand, the lawyer who voluntarily undertakes to represent the class may be left covering the remainder of the costs because he is unable to collect those costs from his client, the class.  Id. at 600.  This decision and the cases that follow it do not address who is responsible for the taxable costs in the event a judgment is entered against the class.  Regardless of whether an attorney can voluntarily agree to undertake the cost of pursuing a class action claim, nothing in Rand or its progeny suggests that passive members of a Rule 23 class, who have not taken any action to pursue the claim or expressed their consent to the risk of these costs, may nonetheless be held liable for the taxable costs in the event the class claim fails.  Plaintiffs do not cite any authority to support this proposition.

Although it is not binding authority, the Court is persuaded by the reasoning in Earley v. Superior Court of Los Angeles Cnty., 95 Cal. Rptr. 2d 57 (Cal. Ct. App. 2000).  Unlike Rand, the court in Earley considered the same issue raised here: whether absent class members can be held liable for a successful defendant's costs.  See Earley, 95 Cal. Rptr. 2d at 64.[12]  Noting that the issue was a novel one, the court relied on the rationale expressed in other cases for treating absent class members differently than other litigants to conclude that class members cannot be subjected to an award of costs.  Id. at 64.  Specifically, the

---

[12]    The Court notes that the Earley court addressed the question in context of a class action suit brought pursuant to California law, however, the court relied on federal cases interpreting Rule 23 to analyze the issue and found that the state authority "requires no different analysis."  Id. at 64-65.

Earley court cited the Supreme Court's decision in Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985). Id. In Phillips, the Supreme Court determined that absent class plaintiffs are not afforded the same due process protections as absent defendants in non-class suits. See Phillips, 472 U.S. at 806-12. The Court explained that fewer burdens are imposed on class plaintiffs in that:

> They need not hire counsel or appear. They are almost never subject to counterclaims or cross-claims, or liability for fees or costs. Absent plaintiff class members are not subject to coercive or punitive remedies. Nor will an adverse judgment typically bind an absent plaintiff for any damages, although a valid adverse judgment may extinguish any of the plaintiff's claims which were litigated.

Phillips, 472 U.S. at 810 (emphasis added) (internal footnote omitted). The Supreme Court recognized that absent plaintiffs "are entitled to some protection from the jurisdiction of a forum State which seeks to adjudicate their claims," but, because of the differences in the burdens imposed, the "opt-out" mechanism for creating a class of plaintiffs was sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. Id. at 811-14. In contrast, the Due Process Clause requires greater protection for an absent defendant given the burdens imposed on defendants, including potential liability for court costs and attorney's fees. Id. at 808. In light of the reasoning in Phillips, the undersigned agrees with Earley that the members of this "opt-out" class cannot be held liable for their pro rata share of the taxable costs.[13] See Earley, 95 Cal. Rptr. 2d at 64. Other federal authority supports this finding as well. See Wright v. Schock, 742 F.2d 541, 545 (9th Cir. 1984) ("Absent class members have no obligation to pay attorneys' fees and litigation costs, except when they

---

[13]     Notably, the Court notes that the class notice sent to the putative class members does not include any warning that a class member could be held liable for a share of Defendant's costs if he or she does not opt out and the class claim ultimately fails. See Notice of Class Action Lawsuit (Doc. 157-1).

elect to accept the benefit of the litigation."); <u>Lamb v. United Sec. Life Co.</u>, 59 F.R.D. 44, 48-49 (S.D. Iowa 1973) ("[T]he Court has concluded that members of the class other than plaintiffs, who do not request exclusion, are not parties and would not be liable for costs even though otherwise bound by the judgment, whether favorable or unfavorable."); <u>In re "Agent Orange" Prod. Liab. Litig.</u>, 100 F.R.D. 718, 732 (E.D.N.Y. 1983) (approving a class notice which states in part that "You will not be charged with costs or expenses whether or not you remain a member of the class"); <u>see</u> <u>also</u> <u>Gay v. Waiters' & Dairy Lunchmen's Union</u>, 86 F.R.D. 500, 502 n.3 (N.D. Cal. 1980) (noting the possibility that costs could be taxed against a plaintiff class, but observing that attempting to collect against the myriad class members would be prohibitively expensive and not worthwhile because "the representative plaintiffs are themselves jointly and severally liable for the whole amount"); William B. Rubenstein, <u>Newberg on Class Actions</u> § 16:13 (4th ed.) ("Absent class members who do not request exclusion are passive and not considered formal parties to the litigation.  They are not liable for costs, though they may be otherwise bound by the judgment, whether favorable or unfavorable.").

Moreover, although there is some merit to Plaintiffs' argument that requiring a representative plaintiff to bear full responsibility for a defendant's taxable costs may deter class action lawsuits, the Court agrees with the finding in <u>Earley</u> that a pro rata approach would be "manifestly unfair" to the class members.  <u>See</u> <u>Earley</u>, 95 Cal. Rptr. 2d at 65.  As explained in <u>Earley</u>:

> it would be entirely appropriate to place the entire cost burden on the named representative plaintiff(s) who has (have) chosen to instigate the action rather than on the absent class members. . . . "[T]he imposition of the cost burden on the entire class of plaintiffs (1) increases the costs of the litigation and such

> costs may be prohibitive, and (2) is unfair to unnamed plaintiffs who took no part in the litigation.  While imposition of the entire cost burden on the named plaintiffs may have a chilling effect on the willingness of plaintiffs to bring class action suits, this effect easily may be outweighed by the potential recovery.  All potential litigants [i.e., the representative plaintiffs] must weigh costs of suit against likelihood of success and possible recovery before deciding to file suit.  Those who choose to take the risks of litigation should be the ones who bear the cost when they are unsuccessful not those who did not make the choice."

Id. at 66 (quoting Van de Kamp v. Bank of Am. Nat'l Trust & Savings Ass'n, 251 Cal. Rptr. 530, 556-57 (Cal. Ct. App. 1988)).  Indeed, "the named representative plaintiff should not be allowed to use without consent the resources or credit of unnamed class members to finance the action." Id. at 68.  Accordingly, the Court rejects Plaintiffs' contention that Defendant's costs must be taxed, pro rata, against the class as a whole.

To the extent Plaintiffs contend that they should only be liable for their pro rata share of the costs, regardless of whether Defendant can recover taxable costs from the class members, this argument is also unavailing.   The Seventh Circuit Court of Appeals considered a similar argument in White v. Sundstrand Corp., 256 F.3d 580 (7th Cir. 2001).  The Seventh Circuit explained that if representative plaintiffs are responsible for only their pro rata portion of the prevailing defendants' taxable costs, this rule would mean that "the defendants must bear most of their own costs: the larger the class, the greater the proportion of costs that prevailing defendants must bear."  White, 256 F.3d at 585.[14]  The White court rejected this proposition given that Rule 54 allows a prevailing party to recover its costs, and "nothing in Rule 23 suggests that cost-shifting is inapplicable to class actions." Id. at 585-86.  Moreover, the court found no justification for requiring the defendant to bear those costs.

---

[14]      The White Court determined that the defendant could not collect any award of costs against absent class members because the class members had never received notice or an opportunity to opt out.  See White, 256 F.3d at 585.

Id. at 586.  In so finding, the Seventh Circuit acknowledged its reasoning in Rand regarding the potential for discouraging class actions across the board, but found that "[i]t does not follow from this, however, that the prevailing defendant must bear the costs."  Id. at 586. Indeed, as discussed in Rand, counsel for representative plaintiffs can "eliminate the financial disincentive that costs awards otherwise would create" by agreeing to bear the risk of a costs award, as well as the risk that their time will go uncompensated.  Id.  While the undersigned has no knowledge of whether Plaintiffs have made any such arrangement with their counsel in this matter, the foregoing authority convinces the Court that Plaintiffs may not require the absent class members or the prevailing party Defendant to share in the liability for the taxable costs.  Rather, as succinctly stated in White, "[Two] persons caused this litigation to be brought, caused the costs to be incurred, and should make the prevailing party whole."  Id.

## IV.   Conclusion

The Court finds that Defendant has not made a sufficient showing that it is entitled to fees, and its Motion is due to be denied to the extent that it seeks such relief.  However, Defendant is entitled to certain costs recoverable pursuant to § 1920, and the Motion is due to be granted to the extent the Court will award such costs in the amounts discussed herein. The Court rejects Plaintiffs' contention that they are liable only for their pro rata share divided amongst the class members, and therefore will award Defendants the full amount of its taxable costs.  In accordance with the foregoing, it is

**ORDERED**:

1.       Defendant's Motion to Tax Costs and for Recovery of Attorney's Fees (Doc. No. 219) is **GRANTED in part and DENIED in part** as follows:

   A.       The Motion is **GRANTED** to the extent the Court awards Defendant **$7,651.39** in taxable costs.

   B.       Otherwise, the Motion is **DENIED**.

2.       The Clerk of the Court is directed to enter Judgment awarding Defendant Independent Savings Plan Company, d/b/a ISPC taxable costs in the amount of $7,651.39, and to adjust the Bill of Costs accordingly.

**DONE AND ORDERED** in Jacksonville, Florida, this 28th day of September, 2015.

**MARCIA MORALES HOWARD**
United States District Judge

lc16/lc11
Copies to:

Counsel of Record